**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

JOHNNY SPENCER; and )
MICHAEL CHAMBERS, )
individually and )
on behalf of all others )
similarly situated, )
                                       )
            Plaintiffs, )
                                       )
v. )    Case No. CIV-12-116-KEW
                                       )
VATTEROTT EDUCATIONAL )
CENTERS, INC., a foreign for )
profit business corporation; )
and STEPHANIE SANDERS, )
an individual, )
                                       )
            Defendants. )

**OPINION AND ORDER**

This matter comes before the Court on Defendant Vatterott Educational Centers, Inc.'s Motion for Summary Judgment (Docket Entry #92) and Defendant Stephanie Sanders' Adoption of the Motion for Summary Judgment (Docket Entry #125). Upon review of the briefing and the evidence, this Court enters this ruling on the pending Motions.

**Facts Relevant to Plaintiff Johnny Spencer's Claims**

On September 23, 2009, Plaintiff Johnny Spencer ("Spencer") enrolled in the Electrical Mechanic diploma program offered by Defendant Vatterott Educational Centers, Inc. ("Vatterott"). Around the time of his enrollment, Spencer spoke to Cathy Millikan ("Millikan"), an employee in Vatterott's facility in Tulsa, Oklahoma. During their discussions, Spencer informed Millikan that he was a convicted felon. Spencer testified that Millikan "was

very adamant" not to worry about his felony conviction noting "it's a felony friendly field, plus we have companies that we work with that will - - would be interested in hiring you once you graduate." Spencer believed the term "felony friendly" meant that "even though I had a felony, even though I had committed a felony, that it was a field that I could go into and still be able to gain employment because the companies would not hold it against you as much as other companies."

Besides seeking to become an electrical engineer, Spencer had sought to become a registered nurse. However, after he committed felonies, he learned he could not be a registered nurse.

Upon completing the program with Vatterott, Spencer enrolled in Vatterott's Associate of Occupational Studies-Electrical Technology program. He graduated from the program on July 17, 2011. After his graduation, Spencer obtained employment with Contractors Unlimited, a placement service. He was employed as an apprentice doing "the kind of work [he] liked to do." Spencer would have liked to do more than apprentice work. He was paid $16.00/$17.00 per hour while at Contractors Unlimited.

After leaving Contractors Unlimited, Spencer obtained a job with Tulsa County Public Facilities at the Tulsa Fair Grounds as an electrical apprentice working 40 hours per week. Spencer performed electrical maintenance and repair work, working on "anything to do with power or electricity out at the fairgrounds, my - - that was

pretty much my field." He was not sure whether Tulsa County was aware of his prior felonies. Spencer was eventually laid off from this job due to budget issues.

Spencer went to work for Advanced Technical Services ("ATS"), a company for which he had worked prior to attending Vatterott. He had a good employment history with ATS and when positions became available, ATS provided him employment. When Spencer had worked for ATS before attending Vatterott, he earned $13.00/$14.00 per hour. After graduating from Vatterott, Spencer was employed in Kingsport, Tennessee with ATS earning $17.00/$18.00 per hour. The increased salary was attributed to Spencer's completion of the Vatterott electrical mechanical program and represented the highest salary he had earned.

Spencer believes he was not hired for one job for which he applied at Nippa Corporation in Tulsa, Oklahoma. Spencer applied for an electrical maintenance position and filled out an application. The application provided a space to list any felony convictions and Spencer listed his convictions. Spencer received an interview and the interviewer inquired about his convictions. Spencer provided an explanation. The interview did not expressly make a statement that Nippa Corporation had a policy against hiring people with a felony, but she definitely seemed concerned about the felonies. Spencer was not hired but was provided no explanation for why he was not hired.

Spencer also felt another company, Oil Capital Electric, did not hire him because of his felony convictions but was not told this was the reason he was not hired.

Spencer also applied to Whirlpool and received an interview but was never called back. The issue of his prior felonies came up but "it wasn't as in-depth as previous employers." Plaintiff Michael Chambers ("Chambers"), who also had prior felony convictions, testified he applied to Whirlpool through a temp agency and was hired.

Spencer testified in his deposition that "[he] believe[s] that there may be businesses out there that possibly may give you an opportunity" with prior felony convictions.

**Facts Relevant to Plaintiff Michael Chambers' Claims**

On October 13, 2009, Chambers enrolled in Vatterott's Heating, Air Conditioning and Refrigeration Mechanic program. Prior to enrolling, Chambers spoke with Defendant Stephanie Sanders ("Sanders"), an employee of Vatterott. Sanders gave Chambers a tour of the Vatterott facility in Tulsa, Oklahoma. She told Chambers that they had small class sizes - no more than five to ten people in the classroom. Chambers noted his first day of class, the classroom had 35 students. Chambers spoke to someone at Vatterott to complain about the class size and was told for some reason they had a big turn out this time. Chambers did not seek to obtain a refund in accordance with his enrollment agreement with

Vatterott.

Chambers also stated that he told Sanders about his felony convictions. Chambers testified Sanders told him that "with a degree, especially from Vatterott, that the employers is (sic) going to overlook all of that with a license, a degree, and a skill, that the employers will overlook that." Chambers also stated Sanders told him about Vatterott's 100 percent placement rate.

Chambers testified by deposition that Sanders told him that the career he chose was "felony friendly." He understood the term to mean "they are not going to discriminate on me because of my felonies."

Chambers also spoke with Millikan about employment placement before he graduated. Millikan also referenced a 100 percent placement rate.

Chambers had never worked in the HVAC industry before attending Vatterott but had worked in welding, which he considered to be a "felony friendly" industry. He did consider that he was precluded from employment in the health care industry because employers are not "felony friendly" in that field. Chambers discussed the medical program at Vatterott with Sanders but she informed him that he could not get into that field because of his felony.

Chambers completed the Vatterott program in December of 2010.

5

He obtained employment with Omni Mechanical as a sheet metal worker. He earned $14.00 per hour plus overtime pay. Chambers did not report his felony convictions on the Omni Mechanical application because it only required convictions during the last ten years. Chambers' convictions dated from 1995 and 1997. The Omni Mechanical application expressly stated that a felony conviction would not necessarily disqualify a person from employment – factors such as age, date of conviction, the seriousness and nature of the crime, and rehabilitation would be considered. Chambers considered Omni Mechanical as a "felony friendly" employer.

Chambers also took an HVAC examination from the Oklahoma Construction Industries Board to obtain a journeyman license. Chambers passed the examination and obtained his license, although it was expired at the time of his deposition.

With his license, Chambers was hired by Oasis Mechanical as a foreman. He supervised a crew of workers installing heating and air conditioning units in a new apartment complex being constructed. Chambers does not remember filling out an application for the job nor did the person that hired him at Oasis Mechanical ask him about prior felony convictions.

Chambers then applied for a job with Masi Mechanical and received an interview. He was asked about his felony convictions and he explained to the interviewer about the nature of the

convictions. Chambers was hired despite his felony convictions. He "basically was a helper" or an apprentice, tearing down duct work to be replaced. Chambers earned $12.00 per hour.

Chambers also obtained a job with Triad Heating & Air working as a serviceman which is the type of employment he went to Vatterott to become. Chambers believes the application requested information about felony convictions. In any event, Triad Heating & Air hired Chambers. He earned between $12.00 and $14.00 per hour.

Chambers was also hired by N-Tech Services in North Richardson, Texas. His job involved servicing heating and air which entailed the same work he learned at Vatterott. Claimant earned $15.00 per hour. Chambers stated he was fired because he "didn't know enough."

Chambers was hired by Filtrex, a heating and cooling company performing maintenance on air conditioners. Chambers traveled extensively on this job and earned $900.00 per week.

### Facts Relevant to the Breach of Contract Claim

The Enrollment Agreement signed by Spencer on September 23, 2009 and October 25, 2010 and by Chambers on October 12, 2009 contained a refund policy provision. Spencer and Chambers identified this provision as a basis for their breach of contract claim asserting Vatterott did not live up to their obligation under this provision. The Refund Policy states

> Refund Policy
>
> In accepting applications, the COLLEGE has assumed the obligation to of furnishing a complete program, teachers, equipment, laboratories, classrooms and other facilities necessary for teaching those programs at a stated offered tuition cost for the program and with the understanding that refunds will be made based on an academic year (36 quarter credit hours/30 weeks) . . .
>
> Enrollment Agreement (Contract), ¶ 10.

Vatterott also stated in the Enrollment Agreement that "[u]pon satisfactory completion of program, and payment of all charges, the COLLEGE will furnish the STUDENT with a Diploma and transcript or a specialized degree and transcript for occupational associate degree level courses." Enrollment Agreement (Contract), ¶ 7.

Spencer testified that Vatterott did not furnish a complete program because his initial instructor, Brian Goodwin ("Goodwin"), some days did not teach the class, although he was present. Instead, Goodwin would "filibuster with one student the majority of the time." Spencer stated Goodwin would sit in front of a computer and work on projects that had nothing to do with the class. Goodwin then quit.

Another instructor, Mark Threadgill ("Threadgill"), took over the class. Threadgill threw out Goodwin's curriculum and started his own. Spencer objected to the two instructors not having the "same agenda as far as giving an education." Spencer also stated that the course was not satisfactorily completed even though he received a diploma and AOS. He felt his diploma was "worthless" because he could not program traffic lights with Tulsa County. He

also testified that the class started and then abruptly ended during which at one point he did not have an instructor who was capable of answering the students' questions and satisfactorily educating them in the manner that they should have been educated.

Chambers also testified he did not believe he received the education on how to actually do what he was going to school for. He stated instructors were not present like they should have been and the course was not "as great as they said that it was."

**Standard on Summary Judgment**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Universal Money Centers v. A.T. & T., 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, 513 U.S. 1052, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed 2d 202 (1986). In determining whether a genuine issue of a material

9

fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).  Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. Applied Genetics v. Fist Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).  With regard to the material facts set forth above, this Court finds no significant dispute.

### Conclusions of Law on Fraud Claims

Spencer and Chambers assert Vatterott, through its employees, made misrepresentations which constitute actionable fraud.  Common law fraud in Oklahoma requires 1) a false material representation, 2) made as a positive assertion which is either known to be false, or made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied upon by a party to that party's detriment. Miller v. Miller, 956 P.2d 887, 902 (Okla. 1998).  Essential to any fraud claim is that the representation giving rise to the claim be false.

Spencer and Chambers narrow their testimony to two representations made by Vatterott which they allege were material and false - 1) that the training areas in which they were seeking a diploma were "felony friendly"; and 2) that Vatterott had a 100

percent placement rate for its graduates. As for the first representation, this Court cannot conclude that the representation made by Vatterott through its employees was false. Both Spencer and Chambers obtained employment on multiple occasions in their chosen fields in spite of their past felony convictions with the employers in most instances aware of those convictions. To a degree, the term "felony friendly" is vague and ambiguous and not the type of representation which is subject to actionable fraud. The term could be an opinion of the declarant, could involve the declarant's experience in placing graduates and with employers, or could be mere puffery. But considering the manner in which it was interpreted by Spencer and Chambers as not posing an impediment to future employment, the term is not a material misrepresentation and cannot be pursued in a fraud claim.

As for the second representation – that Vatterott places 100 percent of graduates, this Court finds that no evidence exists in this record to indicate that Sanders or Millikan possessed information when these representations were allegedly made demonstrating the falsity of the assertion. Spencer and Chambers provide statistics published in 2010 concerning the placement of graduates in 2009 but do not provide evidence that Sanders or Millikan were in possession of such information at the time the representations were allegedly made to them. Any false representation which forms the basis of a fraud claim must be

relative to existing facts at the time of the representation and made with knowledge of the falsity of the statement. *See*, Roberts v. Wells Fargo AG Credit Corp., 990 F.2d 1169, 1172 (10th Cir. 1993). As a result, Spencer's and Chambers' fraud claims cannot stand.

Since Sanders was one of the particular representatives of Vatterott who allegedly made the statements forming the basis of Spencer's and Chambers' fraud claims, she will be entitled to summary judgment for substantially the same reasons as Vatterott.

**Conclusions of Law on Breach of Contract Claims**

Spencer and Chambers also contend that Vatterott breached its contract with them through the Enrollment Agreement, contending it did not "satisfactorily educat[e] us the way we should have been educated." The weight of authority precludes a cause of action, based either in tort or contract, for "educational malpractice" "asserting inadequate or improper instruction." Bittle v. Oklahoma City Univ., 6 F.3d 509, 514 (Okla. Ct. App. 2000)(citations omitted). A cause of action for breach of contract in this context can only be maintained if the student demonstrates the existence of a specific, identifiable agreement for an educational institution's provision of particular services to the student. Id.

The Enrollment Agreement only provides for the general obligation for Vatterott to provide "a complete program, teachers, equipment, laboratories, classrooms and other facilities necessary

12

for teaching those programs . . . ." While Spencer complains that a teacher was essentially incompetent and quit to be replaced by another teacher, this situation did not violate the vague and generalized obligations of Vatterott under the Enrollment Agreement. Spencer and Chambers point to no other written materials provided by Vatterott, no minimum number of hours which were not provided, or classroom space which was not offered from which their breach of contract claims could arise. By virtue of their own testimony, Spencer and Chambers were simply unsatisfied with the product sold to them by Vatterott and in the educational context, the claims represent educational malpractice allegations which are not actionable in contract.

IT IS THEREFORE ORDERED that Defendant Vatterott Educational Centers, Inc.'s Motion for Summary Judgment (Docket Entry #92) and Defendant Stephanie Sanders' Adoption of the Motion for Summary Judgment (Docket Entry #125) are hereby **GRANTED**. Judgment will issue accordingly.

IT IS SO ORDERED this 30th day of September, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE